IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT
————————————————

No. 00-60291
————————————————


KUANG-TE WANG,

                                        Petitioner,

                    v.

JOHN ASHCROFT, U.S. Attorney General,

                                        Respondent.

---------------------------------
Petition for Review of an Order of
the Board of Immigration Appeals
---------------------------------
July 31, 2001

Before HIGGINBOTHAM, DAVIS and BENAVIDES, Circuit Judges.

BENAVIDES, Circuit Judge:

    The petitioner, Kuang-Te Wang, a native of Taiwan, entered the United States on January 18, 1985 as a nonimmigrant visitor authorized to remain for a period not to exceed one year. Petitioner's wife, Yu-Fen Wang, entered the United States approximately one month later in February 1985. Wang and his wife remained illegally in the United States beyond the expiration of the one year period. In 1989, federal agents, without a warrant, entered Wang's home and arrested him on suspicion of transporting illegal aliens.[1] During the course of

---

[1] Wang's arrest did not result in the prosecution of criminal charges against him.

the arrest, Wang's status as an illegal alien was revealed. Consequently, on May 24, 1989, the Immigration and Naturalization Service (INS) issued an Order to Show Cause, charging Wang as being deportable pursuant to § 241(a)(2) of the Immigration and Nationality Act (INA), 8 U.S.C. § 1251(a)(2), in that he remained in the United States beyond the time authorized.

At Wang's deportation hearing, his counsel filed a motion to suppress the evidence submitted by the INS to establish the deportability charge. The motion alleged that the evidence was inadmissible as the fruits of an illegal search. The immigration judge denied the motion to suppress and found Wang deportable. Wang appealed and the Board of Immigration Appeals ("BIA" or "the Board") affirmed. Wang did not petition this Court to review the Board's decision. Instead, on August 23, 1993, Wang timely filed a motion to reopen his deportation proceedings before the BIA, arguing that he was eligible for suspension of deportation under INA § 244(a), as he had been in continuous physical presence in the United States for seven years. During the pendency of this motion two significant events occurred. First, a new regulation was approved by the Attorney General, effective July 1, 1996, providing that:

> (c) Motion to reopen.
>
> (2) Except as provided in paragraph (c)(3) of this section, a party may file only one motion to reopen deportation or exclusion proceedings (whether before the Board or the Immigration Judge) and that motion must be filed no later than 90 days after the date on which the final

2

administrative decision was rendered in the proceeding sought to be reopened, or on or before September 30, 1996, whichever is later.

8 C.F.R. § 3.2(c)(2). Second, in 1997, Wang became eligible to apply for an "adjustment of status." Wang's wife was sponsored by her employer for alien employment certification. She received an approved certification issued by the U.S. Department of Labor and an approved immigrant visa petition pursuant to INA § 203(b). Approval of the labor certification and visa petition enabled Wang's wife to apply for lawful permanent resident status under the terms of § 245(i) of the INA, a process called "adjustment of status." 8 U.S.C. § 1255(i). An application for adjustment of status allows the applicant to apply along with his or her spouse and minor children. INA § 203(d), 8 U.S.C. § 1153(d). INS regulations, however, required Wang to file his application in relation to his ongoing deportation proceedings. 8 C.F.R. § 245.2(a).

Wang thus filed a "Motion to Remand" with the BIA in October 1997 asserting his eligibility for an adjustment of status. The BIA rendered a decision on March 21, 2000 – six and a half years after his original filing – denying Wang relief. In its order, the BIA rejected Wang's request for suspension of deportation in his August 1993 motion to reopen. Wang does not challenge this ruling. The Board then construed his October 1997 "Motion to Remand" as a *motion to reopen* – a motion to reopen filed

3

subsequent to, and distinct from, his August 1993 motion to reopen. The BIA found the motion untimely under § 3.2(c)(2) and concluded that it was therefore without jurisdiction to consider the motion. Wang now petitions this Court for review of the Board's denial of his October 1997 motion as untimely. Wang argues that his motion should have been construed as a motion to remand or, alternatively, as a supplement to his August 1993 motion to reopen. Further, Wang maintains that even if the October 1997 motion was properly construed as a separate and untimely motion to reopen, the Board abused its discretion by not exercising its authority to reopen his deportation proceedings upon its own motion pursuant to 8 C.F.R. § 3.2(a).

Because Wang's challenge involves the Board's interpretation and application of its own regulations, we accord the Board's decision significant deference. *Citizens for Fair Utility Regulation v. United States Nuclear Regulatory Comm'n*, 898 F.2d 51, 54 (5th Cir. 1990). We will give the agency's interpretation of its own rules controlling weight "unless it is plainly erroneous or inconsistent with the regulation." *Wright v. United States*, 164 F.3d 267, 269 (5th Cir. 1999). Cognizant of the limited nature of our review, we examine Wang's challenges to the Board's order.

Wang first contends that his October 1997 motion should have

been treated as a motion to remand rather than a motion to reopen. Wang's contention is precipitated by the fact that a motion to remand, unlike a motion to reopen, is not subject to any specific time or numeric filing requirements. Wang, however, offers no legal or practical reason, other than the self-applied label at filing, as to why his October 1997 motion should be treated as a motion to remand rather than a motion to reopen.

Three distinct motions are available to aliens to challenge an adverse agency ruling – a motion to reopen, a motion to reconsider, and a motion to remand. Motions to reopen and motions to reconsider are governed by 8 C.F.R. §§ 3.2 and 3.8. "A motion to reopen seeks fresh consideration on the basis of newly discovered facts or a change in circumstances since the hearing, or solicits an opportunity to apply for discretionary relief." 1 Charles Gordon, Stanley Mailman, & Stephen Yale Loehr, IMMIGRATION LAW AND PROCEDURE § 3.05[7][a] (Matthew Bender rev. ed. 2001). A motion to remand similarly seeks consideration of new facts or changed circumstances. Motions to remand, although not expressly provided for by the INA or INS regulations, are commonly directed to the Board and are an accepted part of the appellate process. *Matter of Coelho*, 20 I. & N. Dec. 464, 471 (BIA 1992). The Board's recent decision in *In re L-V-K*, Int. Dec. 3409, 1999 WL 607159 (BIA 1999), however, explained the limited role of a motion to remand and its relation to a motion

5

to reopen: "unless and until such time as the proceedings are reopened, the Board has no jurisdiction to entertain a motion remand, which is in substance a motion to reopen, because the 90-day limit for filing a motion to reopen has expired."[2] *In re L-V-K*, Int. Dec. 3409, 1999 WL 607159 (BIA 1999). A motion to remand thus allows the Board, under appropriate circumstances, to remand an open case to the immigration judge for further proceedings. *See*, *e.g.*, *In re Fructoso Luviano-Rodriguez*, 21 I. & N. 235, 1996 WL 136874 (BIA 1996); *Matter of Tee*, 20 I. & N. 949, 949, 1995 WL 28497 (BIA 1995).

In the present case, the decision of the immigration judge matured into a final order – i.e., the case closed – when Wang elected not to appeal the BIA's affirmance of his deportation order to this Court. 8 C.F.R. § 3.39. In order to return the matter to the immigration judge for fresh consideration of Wang's changed circumstances, the Board would need to first reopen Wang's case. Thus, the Board properly construed his motion as a motion to reopen, rather than a motion to remand.

Wang next argues that his October 1997 motion should have

---

[2] To the extent relevant, Wang's argument that he should not be bound by *In re L-V-K* because it was decided after the filing of his October 1997 motion is unavailing. Even before Wang filed his original motion in 1993, the BIA had announced the rule that "where a motion to remand is really in the nature of a motion to reopen or a motion to reconsider, it must comply with the substantive requirements for such motions." *Matter of Coelho*, 20 I. & N. Dec. 464, 471 (BIA 1992).

been considered a supplement to his original August 1993 motion to reopen.  While this argument is certainly plausible, ultimately we cannot find unreasonable the Board's conclusion that the October 1997 motion was a separate and thus untimely motion.  Several facts support the Board's conclusion that it was a separate motion.  First, Wang's motion was not styled as a supplement nor contained any other indication that it was intended as a supplement to a prior motion, rather than a separate motion for relief.  Second, in correspondence, counsel for Wang referred to the motion to remand as a separate motion, stating that "[c]urrently, the above-mentioned Motion to Remand and a Motion to Reopen, filed by Respondent's previous attorney, remain pending before the Board.  Please advise as to the status of these Motions if possible."  Given these facts, we cannot find that the Board's construction of the October 1997 motion as a separate motion to reopen was plainly erroneous.

Finally, Wang contends that the BIA abused its discretion by not exercising its power under § 3.2(a) to reopen his case upon its own motion.[3]  The Government responds that Wang's failure to

---

[3] 3.2 Reopening or reconsideration before the Board of Immigration Appeals.

(a) General.  The Board may at any time reopen or reconsider on its own motion any case in which it has rendered a decision.  A request to reopen or reconsider any case in which a decision has been made by the Board, which request is made by the Service, or by the party affected by the decision, must be in the form of a written motion to the Board.  The decision to grant or deny a motion to reopen or reconsider is within the discretion of the

7

exhaust his administrative remedies, by not asserting before the BIA that it invoke this authority, denies our Court jurisdiction to review his claim. Additionally, the Government asserts that we are without jurisdiction to review the claim because the Board's ability to reopen cases on its own motion is within its unfettered discretion and not subject to review for abuse. Finally, that even if we may review such Board action, the Board did not abuse its discretion in refusing to act upon its own motion.

Necessarily, the first question we must answer is whether Wang failed to exhaust his administrative remedies by not requesting the BIA to exercise its authority under § 3.2(a). Section 106(c) of the INA, applicable to Wang, states that unless an alien exhausts his available administrative remedies, the deportation order "shall not be reviewed by any court." 8 U.S.C. § 1105a(c). Because it is statutorily mandated, an alien's failure to exhaust his administrative remedies serves as a jurisdictional bar to our consideration of the issue. *Townsend v. INS*, 799 F.2d 179, 181 (5ᵗʰ Cir. 1986). An alien fails to exhaust his administrative remedies with respect to an issue when the issue is not raised in the first instance before the BIA –

---

Board, subject to the restrictions of this section. The Board has discretion to deny a motion to reopen even if the party moving has made out a prima facie case for relief.
8 C.F.R. § 3.2(a).

either on direct appeal or in a motion to reopen. *Goonsuwan v. Ashcroft*, 252 F.3d 383, 388-89 (5th Cir. 2001).

While this rule is clear, its application to the facts of this case is more complicated. Section 3.2(a) grants the Board power to act *sua sponte* to reopen a case. *In re G-D-*, Int. Dec. 3418, 1999 WL 1072237, (BIA 1999). Initially, it seems contradictory to require a petitioner to raise an issue upon which the Board acts *sua sponte*, since the Board, by definition, is acting "on its own motion." In this regard, Wang argues further that since the Board is aware of its authority under § 3.2(a), its failure to act implicitly rejects the invocation of that authority and we have jurisdiction to review the decision for abuse of discretion. We disagree. Courts and agencies have a full panoply of powers which they may invoke *sua sponte*. While an agency *may* act upon its own motion, a party that seeks to challenge on appeal the failure to act *sua sponte* must sufficiently raise the issue in the first instance before the agency. *See Luis v. INS*, 196 F.3d 36, 40 (1st Cir. 1999) (finding that an alien failed to exhaust her administrative remedies when she did not request the Board to invoke its *sua sponte* authority in her motions to reopen). In the present case, Wang did not argue before the BIA in his October 1997 motion that "exceptional circumstances" warranted the exercise of their *sua*

*sponte* power under § 3.2(a).[4]  We are therefore without jurisdiction to consider the issue on appeal.

Having reviewed and rejected each of Wang's attacks on the decision of the Board, the petition for review is DENIED.

---

[4] The Board's decisions indicate that an untimely motion to reopen will be considered only if there are exceptional circumstances. *Matter of J-J-*, Int. Dec. 3323 (BIA 1997); *see also* Motions and Appeals in Immigration Proceedings, 61 Fed. Reg. 18,900, 18,902 (1996) ("(S)ection 3.2(a) of the rule provides a mechanism that allows the Board to reopen or reconsider sua sponte and provides a procedural vehicle for the consideration of cases with exceptional circumstances."). A petitioner seeking to have the BIA act upon its own motion should therefore accompany an untimely motion with an explanation of the exceptional circumstances that justify reopening the case. If the Board then finds that the petitioner's claim does not satisfy its "exceptional circumstances" standard, this Court could then decide its jurisdiction to review the decision for an abuse of discretion. We are not faced with such a situation here.